IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN L. JACKSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:20-CV-00039-KFP |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments. Because the decision of the Commissioner of Social Security is supported by substantial evidence and Plaintiff has not identified any reversible error, the decision is AFFIRMED.

**I.  STANDARD OF REVIEW**

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v.*

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the reviewing court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**II.   PROCEEDINGS BELOW**

Plaintiff filed his SSI application on April 21, 2017, alleging he has been disabled since December 27, 2012. R. 79–80. He has a ninth-grade education and past relevant work history as a hand packager and machine packager. *See* R. 180. Plaintiff's SSI application was denied, and he requested reconsideration. R. 94, 102–04, 154–55. Plaintiff received a hearing before an Administrative Law Judge. R. 30–59. The ALJ found Plaintiff had a severe impairment, major depression, which did not meet any of the listed impairments. R. 17–19. The ALJ, therefore, assessed Plaintiff's residual functional capacity ("RFC"). R. 20–23. Based on the RFC, the vocational expert testified that Plaintiff would be able to perform his past relevant work as a hand packager and machine packager; Plaintiff could also perform other jobs in the national economy of laundry checker, sweeper, cleaner, and meat molder. R. 23–25. Thus, the ALJ entered an unfavorable decision (R. 12–14), which became the final decision of the Commissioner when the Appeals Council denied review on November 23, 2019 (R. 1–5). The final decision of the Commissioner is now ripe for review. *See* 42 U.S.C. § 1383(c)(3).

### III. DISCUSSION

Plaintiff raises one issue for review. He asserts the Commissioner's decision is not supported by substantial evidence because the ALJ failed to include concentration limits of Plaintiff's major depression in his RFC. Doc. 12 at 2.

#### A.     The Applicable New Regulations

Plaintiff's argument is, in part, tethered to his contention that the ALJ should have relied on the opinion of treating psychiatric provider Dr. Fernando Lopez, who opined that Plaintiff had marked and extreme impairments, including extreme limitations in his ability to maintain attention and concentration for extended periods, sustain a routine without special supervision, respond appropriately to changes in a work setting, respond to customary work pressures, and complete a normal workday without interruptions from psychologically-based symptoms. R. 390–92. Plaintiff argues this opinion should have been credited; instead, the ALJ found it unpersuasive because it lacked support and consistency.

Plaintiff's argument fails to acknowledge the new regulations or to argue for (or demonstrate) error under the applicable new regulations, and he cites caselaw utilizing the former standard for evaluating medical sources. In ruling on Plaintiff's April 21, 2017 application for benefits, the ALJ properly applied the new Social Security regulations for evaluating medical evidence that became effective on March 27, 2017. *See* R. 20–23. The relevant regulations that apply to Plaintiff's evidence are aptly summarized by the Northern District of Alabama below:

> The new regulations now specify five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. *See* 20 C.F.R. § 404.1513(a) (2020). Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. 20 C.F.R. § 404.1513(a)(2), (3) (2020); *see* 81 Fed. Reg. at 62,562. For claims by adults on or after March 27, 2017, the regulations contain a more focused definition of medical opinion. The regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. § 404.1520c (2020). The Commissioner chose not to retain the old "treating source rule" because healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that **the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion**. (*Id.*). In evaluating claims filed on or after March 27, 2017, "**the agency will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.**" 20 C.F.R. § 404.1520(c)(a) (2020).
>
> Further, the regulations governing claims filed on or after March 27, 2017, **no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources** (e.g., requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). 20 C.F.R. § 404.1520(c)(b) (2020). **Now, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency,** (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). An ALJ must explain how he considered the factors of supportability and consistency. The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. (*Id.*). The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *5–6 (N.D. Ala. July 22, 2021) (emphasis added).

Plaintiff does not argue the new regulations should not have been applied.[2] Indeed, he could not, as Plaintiff's claim was filed after March 27, 2017. *See id*. As explained below, the ALJ properly applied the applicable revised regulations to evaluate Plaintiff's evidence.

    **B.    The ALJ's Determination is Supported by Substantial Evidence with Proper Consideration of the Evidence.**

Plaintiff argues that the ALJ's determination is not supported by substantial evidence because the ALJ did not include a necessary concentration limitation in the RFC, which Dr. Lopez's finding of extreme and marked limitations would have supported. The Court finds the argument unavailing.

    **1.    The ALJ's "Simple Work" Limitation in the RFC Accounts for the Credited Concentration Limitation.**

The ALJ found Plaintiff suffered from a severe impairment of major depression that caused moderate limitations to his ability to interact with others and to maintain adequate concentration, persistence, and pace. R. 17–23. Because the ALJ determined that the impairments did not meet or equal a listed impairment, the ALJ next assessed Plaintiff's RFC, which is "the most [a claimant] can still do despite [his] limitations." *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920a(d)(3), 416.945(a)(1), 416.946(c); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (S.S.A.). The RFC is a determination the ALJ makes based

---

[2] In any event, such an argument would be waived. *See, e.g. Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); *see also Maguire v. Saul*, No. 8:20-CV-710-T-TGW, 2021 WL 2284463, at *3 (M.D. Fla. June 4, 2021) ("Since the plaintiff did not acknowledge the changes due to the new regulations, she obviously did not state any challenges to, or interpretations of, the new regulations. Consequently, there is no basis for concluding that the [administrative] law judge contravened the new regulations in considering the opinions of any medical source.").

on "all the relevant medical and other evidence" in the record. 20 C.F.R. § 416.945(a)(1), 416.945(a)(3). Here, the ALJ found Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to **simple work** with no more than occasional interaction with the public.

R. 20 (emphasis added). Applying this RFC, the vocational expert found that Plaintiff could perform his past relevant work as a hand packager and machine packager. R. 23, 52–55. In addition, the vocational expert testified Plaintiff could perform additional jobs as a laundry checker, sweeper, cleaner, and meat molder. R. 24–25, 52–55.

Without explanation, Plaintiff argues that the RFC's "simple work" limitation applies *only* a memory limitation and fails altogether to incorporate identified concentration limitations. *See* Doc. 12 at 3, 7–8. Plaintiff's position is unsupported by case law, as the Eleventh Circuit has held that a limitation to "simple work" or something similar sufficiently accounts for moderate difficulties in concentration, persistence, and pace if the medical evidence shows the claimant can perform simple, routine work. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (holding that because evidence, including the ability to perform household chores and mental status exams with fair insight and judgment and normal thought processes, showed plaintiff could perform simple, routine tasks, the ALJ's limitation of unskilled work in the RFC sufficiently accounted for her moderate difficulties in concentration, persistence, and pace); *Smith v. Comm'r of Soc. Sec.*, 486 Fed. Appx. 874, 875 (11th Cir. 2012) (approving RFC that limited claimant to simple, routine, repetitive tasks as adequately accounting for moderate

limitations in concentration, persistence, and pace when medical evidence supported that claimant could perform simple, routine, repetitive work).

Plaintiff's conclusion is also unsupported by the record; the ALJ evaluated the medical opinions and evidence as a whole (*see* R. 20–23), and those records support the ALJ's assessment of Plaintiff's mental limitation to simple work—inclusive of applicable concentration limitations. For example, from 2011 through 2012, Plaintiff was treated by Dr. Lopez for major depressive disorder. R. 265, 282–87. He was then absent from mental health treatment from October 2012 until April 2017, when he was hospitalized in Southeast Alabama Medical Center with suicidal ideation and depression, exacerbated by homelessness. R. 308–09; *see also* R. 21. Plaintiff had been homeless about six months after being denied readmission to the shelter where he had been living. R. 309, 330. His initial inpatient mental status exams indicate that he exhibited fair/normal concentration and intact memory, while also exhibiting a depressed mood and impaired judgment/insight. R. 312–29. He had an "excellent response to treatment" while hospitalized, and Plaintiff was discharged after seven days to a group home where he remained at least through the time of the hearing before the ALJ. R. 309; *see* R. 17.[3]

Dr. Lopez treated Plaintiff following his hospital release and in May 2017 diagnosed him with moderate major depressive disorder. R. 379. Dr. Lopez identified no memory problems and found Plaintiff's speech clear; thoughts, thought processes, and mood/affect

---

[3] Plaintiff had a history of substance abuse. However, at the time of his hospitalization, he had ceased using most drugs but still had a "bad habit" of using marijuana that he wanted to quit. He was referred for residential mental health treatment to help reduce the risk of substance abuse. *See* R. 17; *see also* 85, 91, 208.

appropriate; associations and concentration/attention intact; and judgment and insight good. R. 380. Dr. Lopez noted that Plaintiff's condition and progress were "maintained." R. 381. The following month, Dr. Lopez observed Plaintiff as "stable" with a normal mental status exam, and his medication regime was continued. R. 394–97. Similarly, in July 2017, Plaintiff was observed with a normal mental status exam and as doing well and being "very active." R. 398–401. At that time, Dr. Lopez noted good insight/judgment, appropriate mood and affect, and intact concentration/attention. *Id*. And, that positive trend continued in August 2017. *See* R. 402–04. By September 2017, Plaintiff was asymptomatic. R. 406. He was seen thereafter by Dr. Lopez in three-month intervals and observed as stable and doing well; indeed, although he continued to be depressed related to his wife's 2008 death, Plaintiff had normal mental status exams with Dr. Lopez through March 2018. R. 410–17. Oddly, despite these serial treatment records documenting Plaintiff's good progress and stability, Dr. Lopez completed an evaluation in February 2018 indicating Plaintiff had marked and extreme limitations of all work-related mental abilities, including the ability to maintain concentration for extended periods. R. 390–92.

In June 2018, Dr. Esiri Esin started treating Plaintiff and reported he was stable. R. 418–21. Plaintiff continued to show improvement, and he exhibited euthymic mood and affect; he was doing well. *Id*. He presented only for medication refills in October 2018. R. 854.

Consistent with this progress, Plaintiff's extensive treatment records from Spectracare show that he regularly attended group therapy from May 2017 to December 2018, and the records document his mood stability and continued improvement despite

ongoing depression and occasional "depressed/sad" mood. R. 385–88, 394–469, 473–546, 547–634, 635–74, 676–763, 764–803, 820–64, 866–79; *see also* R. 46–47. Although he had instances of depression, for example, around the holidays, the majority of these treatment records demonstrate that Plaintiff was active in discussions or participated when asked, exhibited a stable mood, and maintained activities such as chores and hygiene. *See id*; *see also* R. 209. While his depression periodically increased, it was managed, and the records demonstrate positive progress and response to medication change. *See, e.g.* R. 645–48.

The ALJ noted that while Plaintiff requires periodic reminders at his group home residence to bathe and change his clothes, he does chores and attends to his personal care. *See* R. 20, 199–200. Although Plaintiff reported he is not as active since his depression began, due to a lack of energy, Plaintiff engages in activities in and outside the group home, such as playing cards daily, shopping once a week, shooting pool, playing basketball, eating out, going to the park, and doing chores around the house. R. 199–205, 209. However, Plaintiff reported that sometimes he can hardly complete tasks because he is so depressed and his mind wanders. R. 40, 204. Although Plaintiff said he cannot pay attention for very long, he finishes what he starts and has a "pretty good" ability to follow spoken instructions. R. 204. He does not have hallucinations or delusions, just depression, and he manages the symptoms by watching television, listening to music, and reading his Bible. *See* R. 605, 661; *see also* R. 19. Plaintiff reported he does not handle stress or change well and does not get along well with authority figures. R. 205. According to Plaintiff, he has

difficulty getting along with others because he is depressed and does not feel like being bothered. R. 204.

State agency psychological consultant Dr. Harold Veits found, in his June 2017 assessment of Plaintiff, "sustained concentration and persistence limitations" such that Plaintiff was not significantly limited in carrying out short and simple instructions but was moderately limited in carrying out detailed instructions. R. 89. Dr. Veits also found that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods of time, but he could sustain concentration and persistence for two hours and make simple work-related decisions. *Id*. Dr. Veits also found a moderate limitation in Plaintiff's ability to interact with others. R. 88. Again demonstrating progress, subsequent medical records show that Plaintiff reported in July 2018 that "he tries to walk away from conflict and communicate with others without becoming disrespectful" (R. 667), which indicated to the ALJ that Plaintiff was able to maintain a "fair ability to interact with others" (R. 18). Dr. Veits concluded that Plaintiff was limited to unskilled work due to the impairments. R. 90.

Considering the medical evidence as a whole, the ALJ found Plaintiff experienced mild to moderate depression but that he had responded well to treatment since his discharge from the hospital in April 2017. Applying the new regulations for evaluating evidence, the ALJ found Dr. Veits's prior administrative medical finding persuasive and Dr. Lopez's opinion unpersuasive. R. 22–23. *See* 20 C.F.R. § 416.920c (2017) . Dr. Veits's opinion was persuasive because it was consistent with the documented steady progress and stability Plaintiff exhibited before and after Dr. Veits's opinion. *See* R. 22–23, 87–89; *see also* R.

379–88, 394–420. Dr. Lopez's opinion, on the other hand, was inconsistent with his own treatment records and the medical records from others. *See Nix*, 2021 WL 3089309, at *6 ("[T]he ALJ found [the treating physician's] opinion was not persuasive because it was inconsistent with other evidence in the record and not consistent with Plaintiff's limited history of conservative treatment. . . . Thus, the court concludes that the ALJ evaluated the medical evidence properly under the new regulations."). Therefore, Dr. Lopez's finding of a marked and extreme limitation in concentration, persistence, and pace lacked supportability in and consistency with the record evidence. *See* R. 22–23, 391.

The ALJ was required to evaluate those two factors—supportability and consistency—per the new regulations, but he was not required to give a detailed explanation of the discounted weight of this treating physician's opinion. *Id.* (citing 20 C.F.R. § 404.1520c(b)(3)) ("An ALJ must explain how he considered the factors of supportability and consistency. The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors."). Dr. Lopez's treatment notes over an extended period of time observed Plaintiff's stability, intact concentration, and consistent but unremarkable complaints of depression. *See* R. 21, 19, 379–82, 394–417. According to Dr. Lopez's treatment observations, Plaintiff was progressing well and was observed to be mentally stable. *See* R. 379–82, 394–417. Given this, the ALJ's explanation that Dr. Lopez's opinion was unpersuasive because it lacked support and consistency comports with the record as a whole, as Plaintiff's other

medical records and Dr. Lopez's records belie his one-off marked-and-extreme opinion. The ALJ, therefore, correctly applied the regulations to discount Dr. Lopez's opinion.[4]

In accordance with the credited opinion of Dr. Veits, the ALJ's RFC limits Plaintiff to simple work, which, critically, does not involve detailed instructions. R. 20. This limitation, then, is consistent with Dr. Veits's opinion that Plaintiff is limited in his ability to engage in detailed work. *See* R. 89. Additionally, Dr. Veits opined that Plaintiff is "moderately limited" in attention and concentration for "extended periods" but can "attend and concentrate for two-hour periods." *Id*. "Simple work" would not require more than that. *See* POMS DI 24510.005, General Guidelines for RFC Assessment ("Consider an 8-hour workday and a 5-day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions."). Importantly, the medical records following Dr. Veits's opinion, which were not available to Dr. Veits but were considered by the ALJ, further support the "simple work" limitation in the RFC because they consistently document Plaintiff's continued good progress and overall stability. *See* R. 18, 20, 86, 88. Accordingly, the Court finds, given Plaintiff's medical evidence, that the "simple work" limitation in the RFC fully accounts for Plaintiff's limitations in concentration.

---

[4] Likewise, the ALJ found Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms inconsistent with the medical records demonstrating Plaintiff's overall positive response to treatment since 2017. R. 67–68.

### 2. The Hypothetical Question Sufficiently Accounted for the Concentration Limitation.

Finally, Plaintiff argues that the hypothetical to the VE failed to properly account for the concentration limitation. The ALJ is only required to include the limitations in the hypothetical question that are supported by the record, and the hypothetical did so on this record. *See Nix*, 2021 WL 3089309, at *6 ("[T]he ALJ evaluated the medical source opinions for the relevant period and found [the treating physician's] opinion to be both unpersuasive and inconsistent with the other medical evidence presented in the record, thus considering them irrelevant. . . . Given this record evidence, it was reasonable for the ALJ to not consider the opinion of [the treating physician] because it was inconsistent with other medical findings established in the record, thus it was unnecessary to present that information to the Vocational Expert.") (citing *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988); *McSwain v. Bowen*, 814 F.2d 617, 619–20 (11th Cir. 1987)); *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (VE's testimony in response to an accurate hypothetical question incorporating the RFC is substantial evidence supporting the decision); *Winschel*, 631 F.3d at 1180–81 ("But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").

The ALJ's initial hypothetical to the VE assumed an individual of Plaintiff's age, education, and past jobs, who was limited to simple work and no more than occasional interaction with the public. R. 54–55. In response to that hypothetical question, the

13

vocational expert identified Plaintiff's past work as a hand and machine packager along with other jobs available in the national economy, laundry checker, sweeper cleaner, and meat molder.[5]

Certainly, a hypothetical may explicitly incorporate a limitation on concentration. However, limiting the hypothetical to "simple work" or "unskilled work" sufficiently, albeit implicitly, accounts for an impairment in concentration when the medical evidence indicates that a claimant retains the ability to work despite the limitation. *See, e.g. Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of [the plaintiff's] impairments in the hypothetical posed to the VE because he implicitly accounted for [the plaintiff's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work."); *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907–08 (11th Cir. 2013) (approving limitation to "simple, one-two step task [with] only occasional contact with the public, coworkers, and supervisors" as accounting for moderate limitation in concentration, persistence and pace in light of two non-examining psychologists' opinions supporting the finding); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 951 (11th Cir. 2013) (finding limitation of "one to three step non-complex tasks" sufficiently accounted for moderate limitation in concentration, persistence, and pace); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F.

---

[5] Plaintiff's attorney attempted to rehab the vocational expert testimony at the hearing by asking hypotheticals that incorporated Dr. Lopez's more extreme opinion of limitation (e.g., an individual who was "incapable of appropriate interaction with coworkers, supervisors, and the general public on even an occasional basis" or who was "incapable of dealing [with] customary work pressures or changes in a work setting on even an occasional basis"). R. 57. However, the attempted rebuttal was ineffective given the ALJ's supported finding that Dr. Lopez's opinion was unpersuasive.

App'x 881, 883 (11th Cir. 2013) (finding limitation "to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making" was sufficient to account for moderate limitation in maintaining concentration, persistence, and pace); *Scott v. Comm'r of Soc. Sec.*, 495 Fed. Appx. 27, 29 (11th Cir. 2012) (finding that because medical evidence showed plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace, the hypothetical question posed to VE was sufficient).

In determining that the Plaintiff could perform simple work, the ALJ noted that Plaintiff had done well when he resided in a group home setting, that he articulated future plans to gain his independence and return home, and he engaged in various activities inside and outside the group home.[6] *See* R. 19–20, 22; *see also* 669, 867. As discussed in detail

---

[6] Plaintiff relies on *Mace v. Comm'r, Soc. Sec. Admin.*, 605 F. App'x 837, 842–43 (11th Cir. 2015) to argue the ALJ failed to adequately consider Plaintiff's group home setting in assessing his alleged disability. In *Mace*, the court held that (under the then-applicable regulations) the ALJ failed to establish good cause for according little weight to the treating physician's opinion. In doing so, the court found error in the ALJ's discount of the physician's opinion in favor of disability because Plaintiff's statements were indicative of positive interactions and activities. The Court found that, "[b]ecause the ALJ did not account for the effect of the [structured] environment on [the plaintiff], the ALJ found inconsistencies between [the treating physician's] opinion and the evidence that were largely illusory." The nature of Mace's mental impairments was not adequately addressed by the ALJ in concluding the treating physician's opinion was inconsistent because there was evidence of a difference between the plaintiff's ability to function in a controlled environment versus a work environment, and the ALJ's failure to address that difference flawed the decision. Unlike Mace, in this case there is no such evidence, and the medical opinions and evidence demonstrate that Plaintiff has had steady progress and stability, albeit while residing in a group home—a fact that the ALJ noted in considering the record as a whole, including the wide range of Plaintiff's reported activities both inside and outside the group home, such as chores, shopping, playing games, future planning, etc. *See* R. 19-20, 22, 41-42, 45, 50-51, 199-205, 209; *see also* 669, 867. In light of the record as a whole, there is no error in the ALJ's determination that Plaintiff's subjective complaints of symptoms were inconsistent and Dr. Lopez's opinion was not only inconsistent with the other medical evidence but also with his own treatment records.

above, the ALJ also cited medical evidence that support a finding that Plaintiff could perform simple work despite his moderate limitation in concentration, including records documenting Plaintiff's sustained stability and participation in treatment resulting in excellent progress and engagement in a variety of activities, including some outside the group home setting. The Court finds that these records, along with Plaintiff's daily activities, constitute substantial evidence supporting the conclusion that Plaintiff can perform simple tasks despite his moderate limitation in concentration.[7] Thus, the ALJ's limitation to simple work in the VE's hypothetical sufficiently accounted for this moderate limitation, and the vocational expert testimony, therefore, also provides substantial evidence for the ALJ's decision.

## IV.  CONCLUSION

The only matters before the Court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. The Commissioner's findings are to be affirmed when supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *accord* 42 U.S.C. § 405(g). As is often said, the district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; it must simply review the ALJ's decision as a whole and determine if the decision is reasonable and supported by

---

[7]Plaintiff also argues that remand is warranted because the ALJ posed alternate, more restrictive hypothetical questions that resulted in no jobs being available for Plaintiff. However, the "ALJ may pose a hypothetical with more restrictive limitations to the VE, even if the ALJ determines that the more restrictive limitations are not supported by the record. *Duckworth v. Berryhill*, No. 4:17-CV-00299-TMP, 2018 WL 3747804, at *15 (N.D. Ala. Aug. 7, 2018), *aff'd sub nom. Duckworth v. Soc. Sec. Admin., Comm'r*, 777 F. App'x 426 (11th Cir. 2019) (citation omitted). Contrary to Plaintiff's suggestion, an ALJ is not bound by the hypothetical with the most restrictive limitations if the record does not support those limitations. *Id*.

substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.

While there may be some evidence in this record that could support a finding favorable to Plaintiff, there was ample medical evidence before the ALJ supporting his contrary finding. Given the record evidence, it was reasonable for the ALJ to consider the opinion of Dr. Lopez unpersuasive because it lacked support and consistency, and the RFC adequately incorporated the supported limitations, including the limitation on concentration. Therefore, the Court finds that substantial evidence supports the findings of the Commissioner and that the correct legal standards were applied.

Accordingly, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 29th day of September, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE